UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RUBY COX, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:22-CV-156-RDP |
| | } |
| PAMELA WILSON COUSINS, et al., | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on Motions to Dismiss Plaintiff Ruby Cox's Amended Complaint filed by Defendants Jefferson County Sheriff's Office (Doc. # 5), Judge Pamela Cousins (Doc. # 9), and Jefferson County (Doc. # 11). Plaintiff, who is proceeding *pro se*, responded to the Motions. (Docs. # 17, 18, 24). After careful consideration, the court concludes that Defendants' Motions (Docs. # 5, 9, 11) are due to be granted.

**I.    Background**

This action stems from Plaintiff's three-day incarceration at the Jefferson County Jail in Birmingham, Alabama. On February 4, 2020, Plaintiff appeared at the Jefferson County Courthouse before Judge Pamela Cousins on a child support matter. (Doc. # 2 at 12). When Plaintiff refused to provide her address to the child's father as instructed by Judge Cousins -- presumably because she lived in her car and, thus, had no physical address -- Judge Cousins held Plaintiff in civil contempt and sentenced her to three days in jail. (*Id.* at 12-16).

On February 4, 2022, Plaintiff filed a complaint against four defendants: the Jefferson County Sheriff's Office ("JCSO"), Jefferson County, Judge Pamela Wilson Cousins, and the Family Court of Jefferson County. (Doc. # 1). Plaintiff filed an amended complaint on February 11, 2022. (Doc. # 2). In her amended complaint, Plaintiff asserted a variety of claims against

Defendants pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (Doc. # 2 at 1). These claims include alleged violations of her civil and due process rights, conspiracy, and tort claims. (Doc. # 2 at 1).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12 (b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### III. Analysis

Defendants JCSO, Jefferson County, and Judge Cousins now move the court to dismiss all claims asserted against them by Plaintiff for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Docs. # 5, 9, 11). The court addresses each motion in turn.

#### A. The JCSO's Motion to Dismiss

Plaintiff bases her claims against the JCSO on what she contends were a variety of unlawful activities. Specifically, Plaintiff seeks relief because she alleges that: (1) the JCSO provided her with fluoride toothpaste which, as she alleges, is harmful to her health; (2) the JCSO denied her adequate medical attention after she lost consciousness on two occasions; (3) the JCSO denied her access to fruit after she reported a vegan/raw lifestyle; (4) the JCSO required Plaintiff, who is sixty-six (66), to sleep on a top bunk; and (5) the JCSO unlawfully conspired with Judge Pamela Wilson Cousins to release Plaintiff from jail approximately ten (10) hours after the designated time for release. (Doc. # 2 at 4-5, § A-F).

The JCSO argues that Plaintiff's complaint does not -- and cannot -- state a claim upon which relief can be granted because the JCSO is not a legal entity subject to suit. (Doc. # 5 at 1-2). The court agrees.

Generally, sheriff's departments are not considered legal entities subject to suit. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). That determination, however, is dictated by the law of the state in which the district court entertaining the suit sits. *Barber*, 951 F.2d at 1214 (citing Fed. R. Civ. P. 17(b)). Here, Plaintiff filed her case in a federal district court in Alabama. (Doc. # 2). So, Alabama law governs this inquiry. "It is clear under Alabama law that the sheriff's department is not a legal entity subject to suit." *Ex parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003); *White v. Birch*, 582 So. 2d 1085, 1087 (Ala.1991). Moreover, the Eleventh Circuit has interpreted Alabama law on this question and has similarly concluded that a sheriff's office or department is not a legal entity and is, therefore, not subject to suit or liability. *Barber*, 951 F.2d at 1214 (dismissing Plaintiff's case against the JCSO because, under Alabama law, the sheriff's department is not subject to suit).[1] *See also Pullom v. Jefferson Cnty., Alabama*, No. 2:20-CV-01912-AMM, 2021 WL 3742406, at *2 (N.D. Ala. Aug. 24, 2021) (same).

Because the JCSO is not a legal entity subject to suit, Plaintiff has failed to establish a claim upon which relief can be granted.

### B.     Jefferson County's Motion to Dismiss

Jefferson County similarly moves to dismiss Plaintiff's claims because it is not a proper defendant. (Doc. # 11). In her amended complaint, Plaintiff asserts only that "[t]he County where the Judge, the case, and The Jefferson County Sheriff Department resides and are liable to this conspiracy on behalf of their employees." (Doc. # 2 at 5). Liberally construing this allegation, it appears that Plaintiff seeks damages from the County under a theory of supervisory liability.

Jefferson County argues that it is not liable because it lacks "any supervisory authority over

---

[1] Plaintiff cites *Barber* to show that the JCSO "can and has been sued before." (Doc. # 18 at 2). While Plaintiff correctly notes that the plaintiff in *Barber* sued the JCSO, Plaintiff overlooks the fact that the *Barber* court ultimately concluded that the JCSO was not a legal entity subject to suit and dismissed the claims against it. *Barber*, 951 F.2d at 1214. That same result is warranted here.

4

either the court/judicial officials or the Sheriff and his employees/agents." (Doc. # 11 at 2). Put simply, "it has no control" over the entities that Plaintiff alleges it has control over. (*Id.* at 2-3).

"[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cnty., Ala.*, 137 F. 3d 1285, 1289, 1292 (11th Cir. 1998) (*en banc*) (concluding that Jefferson County could not be liable in a civil rights case where the County had no authority to manage the sheriff's department). "To evaluate whether a local government is liable under [Section] 1983, a court must 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Turquitt*, 137 F. 3d at 1287 (internal quotation marks omitted). Ultimately, this inquiry centers on the degree of responsibility that a local government has over the entity in question. *Turquitt*, 137 F. 3d at 1287 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298 (1986) ("A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'"). *See, e.g., Pullom*, No. 2:20-CV-01912-AMM, 2021 WL 3742406, at *11 (granting Jefferson County's motion to dismiss where the County was "not actually responsible for managing the sheriff's employees . . . ."); *Young v. Jefferson Cnty., Alabama*, No. 2:15-CV-01605-JEO, 2016 WL 4180864, at *2 (N.D. Ala. Aug. 8, 2016) (granting Jefferson County's motion to dismiss, in part, because Plaintiff failed to allege that Jefferson County had authority to control any Circuit Judge of the Tenth Judicial Circuit).

Here, Plaintiff's blanket allegation that Jefferson County is "liable to this conspiracy on behalf of their employees" falls short of plausibly alleging that Jefferson County had the authority

5

to control the Family Court of Jefferson County and/or Judge Cousins.[2] Not only does Plaintiff's conclusory allegation that the Family Court and/or Judge Cousins are "employees" of Jefferson County lack support, but it also fails to indicate that the County had the requisite degree of responsibility over either to subject the County to liability. *See Twombly*, 550 U.S. at 555, 557 (pleadings based upon more "labels and conclusions" or "naked assertion[s]," absent supporting factual allegations, are insufficient at the pleading stage). Indeed, the Supreme Court of Alabama has confirmed that circuit and district court judges are state officers, not county officers. *Jefferson Cnty. v. Swindle*, 361 So. 2d 116, 118 (Ala. 1978). Moreover, there is no allegation that the Family Court or Judge Cousins are county policymakers in their daily management of court dockets. *Turquitt*, 137 F.3d at 1292. Because Plaintiff has not alleged that Jefferson County has authority or control over the Family Court and/or Judge Cousins, it cannot be liable for the conduct of those entities. *See Pullom*, No. 2:20-CV-01912-AMM, 2021 WL 3742406, at *11; *Young*, No. 2:15-CV-01605-JEO, 2016 WL 4180864, at *2. Accordingly, Plaintiff has failed to state a claim against Jefferson County.

    **C.**    **Judge Cousins's Motion to Dismiss**

Plaintiff alleges that Judge Cousins violated her right to free speech, seized her without probable cause, deprived her of a fair trial, inflicted cruel and unusual punishment, and violated her rights under the equal protection and due process clauses. (Doc. # 2 at 1-2, 36-39). Plaintiff also alleges that Judge Cousins and other Defendants conspired to deprive her of her constitutional rights. (*Id.* at 40-42). Plaintiff's main claim against Judge Cousins appears to be that Judge Cousins arrested her without a warrant when she found Plaintiff in contempt of court. (*Id.* at 37).

---

[2] The Eleventh Circuit, sitting *en banc*, has previously concluded that Jefferson County does not have sufficient authority to control the JCSO for liability purposes. *See Turquitt*, 137 F.3d at 1286. This court adopts the Eleventh Circuit's holding and rationale and, thus, considers only Jefferson County's authority to control the remaining defendants.

In response, Judge Cousins argues that the doctrine of judicial immunity bars Plaintiff's claims against her. (Doc. # 9 at 9-11). Few doctrines have been more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction. *Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S. Ct. 496, 499 (1985) (citing *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S. Ct. 1213, 1217 (1967) (extending absolute immunity to a municipal court judge who was sued for damages under 42 U.S.C. § 1983)). More specifically, judicial immunity defeats a § 1983 claim for money damages brought against a state court judge in either his official or individual capacity. *Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005) (citing *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996)). *See, e.g.*, *Knezevich v. Ptomey*, 761 F. App'x 904, 908 (11th Cir. 2019) (affirming the district court's finding that the doctrine of judicial immunity barred a § 1983 claim asserted against a state judge in both his official and individual capacities). This absolute immunity is intended "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017) (quoting *Pierson*, 386 U.S. at 554).

In applying the test for judicial immunity, "the first question is whether the judge dealt with the plaintiff in his judicial capacity." *William B. Cashion Nev. Spendthrift Trust v. Vance*, 552 Fed. App'x 884, 886 (11th Cir. 2014). Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity. *Sibley*, 437 F.3d at 1070 (internal citation omitted). "If the judge acted in his judicial capacity, and if he did not act in the clear absence of all jurisdiction,

7

then he is entitled to judicial immunity, as a matter of law." *McCorvey v. Weaver*, 2014 WL 5392083 *2 (S.D. Ala. 2014) (citing *Washington Mut. Bank v. Bush*, 220 Fed. App'x 974, 975 (11th Cir. 2007) (citation and internal marks omitted)).

Here, Judge Cousins's interaction with Plaintiff was limited to a court proceeding in which Plaintiff appeared before Judge Cousins on a child support matter. A review of Plaintiff's complaint reveals that her allegations arise only from events that occurred in open court, involved a controversy before Judge Cousins, and that the confrontation occurred during an appearance before Judge Cousins. (Doc. # 2 at 12-16). Stated simply, Plaintiff's allegations pertain only to actions that Judge Cousins exercised in accordance with her statutory powers as a state judge. Moreover, noticeably absent from Plaintiff's amended complaint is a single allegation that Judge Cousins acted outside of her judicial jurisdiction when she found Plaintiff in contempt and sentenced her to three days in jail. Indeed, Alabama Code § 12-12-6 expressly provides Judge Cousins with the "power to punish for contempts." *See also* Ala. Code § 12-11-30(5) (explaining that such punishment may neither exceed a fine of one hundred dollars ($100) nor a five-day term of imprisonment); *Knezevich*, 761 F. App'x at 907 ("Interpreting the law is a normal judicial function."). Accordingly, Plaintiff's claims for monetary damages against Judge Cousins are barred by judicial immunity.[3]

---

[3] It does not appear that Plaintiff seeks any injunctive and/or declaratory relief. However, to the extent that one could construe her amended complaint as alleging such, the court concludes that Plaintiff still fails to state a plausible claim against Judge Cousins. While judicial immunity does not always apply to § 1983 claims seeking injunctive or declaratory relief against state-court judges, *see Pulliam v. Allen*, 466 U.S. 522 (1984), Congress partially abrogated *Pulliam* by passing the Federal Courts Improvement Act ("FCIA"), Pub.L. No. 104-317, 110 Stat. 3847 (1996). The FCIA amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000); *see also West v. Jones*, No. 1:14-CV-02298-VEH, 2015 WL 2450538, at *5 (N.D. Ala. May 22, 2015) (analyzing the FCIA in a § 1983 action against a Circuit Judge). Because Plaintiff has not alleged a violation of a declaratory decree and because declaratory relief is unavailable given that Plaintiff could receive an adequate remedy at law for alleged violations, judicial immunity bars any claims for prospective injunctive relief under the FCIA. *Jones*, No. 1:14-CV-02298-VEH, 2015 WL 2450538, at *5 (quoting *Ray v. Judicial Corrections Services, Inc.*, 2014 WL 5090723, at *3 (N.D. Ala. Oct. 9, 2014)).

### D. Family Court of Jefferson County

Although Defendant Family Court of Jefferson County did not file a Motion to Dismiss, the court *sua sponte*[4] addresses whether it has subject matter jurisdiction over the claims asserted against it.

The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction over a lawsuit against a state. *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1302-03 (11th Cir. 2005); U.S. Const., amend. XI. Although the state is not named as a party of record, the amendment applies when for all practical purposes the action is against the state and extends to state agencies and other arms of the state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Circuit has found that "[t]he Eleventh Amendment prohibits actions against state courts . . ." *Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993). *See Caffey v. Alabama Supreme Ct. (ASC)*, No. 2:10-CV-3050-VEH, 2011 WL 13175081, at *6 (N.D. Ala. May 25, 2011), *aff'd sub nom. Caffey v. Alabama Supreme Ct.*, 469 F. App'x 748 (11th Cir. 2012) (barring claims against the Alabama Supreme Court on Eleventh Amendment grounds); *Jones v. L.*, No. 2:17CV109-WKW-TFM, 2017 WL 2347683, at *3 (M.D. Ala. May 1, 2017) (dismissing claims against the Coosa County Probate Court); *Oliver v. Cir. Ct. of Russell Cnty.*, No. 3:13CV223-MHT, 2013 WL 6096371, at *4 (M.D. Ala. Nov. 20, 2013) (dismissing claims against the Circuit Court of Russell County). Accordingly, the Eleventh Amendment bars Plaintiff's claim against the Family Court of Jefferson County.

---

[4] "[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); Fed. R. Civ. P. Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

E.     **Plaintiff's Claims Under 42 U.S.C. §§ 1985 and 1986**

Plaintiff generally alleges that this case "is an action pursuant to 42 U.S.C. §§ . . . 1985, and 1986."). (Doc. # 2 at 1). Section 1985 provides a federal cause of action against any person who engages in various conspiracies, including conspiracies to obstruct the course of justice in state courts with the intent to deprive a person of equal protection of the laws or conspiracies to deprive a person of equal protection or equal privileges and immunities under the laws.[5] Section 1986 provides a federal cause of action against any person who has knowledge of a § 1985 conspiracy and the power to prevent it but neglects or refuses to do so. *See Park v. City of Atlanta*, 120 F.3d 1157, 1159-60 (11th Cir.1997) (noting that a § 1986 claim requires a § 1985 violation). To be eligible for injunctive or declaratory relief, a civil-rights plaintiff must show: (1) the defendant violated his rights; (2) there is a serious risk of continuing irreparable injury if the relief is not granted; and (3) there is no adequate remedy at law. *Bolin*, 225 F.3d at 1242.

To show the existence of a conspiracy, Plaintiff alleges that an officer at the jail could only have acted rudely toward Plaintiff based on information received from Judge Cousins. (Doc. # 2 at 6). Plaintiff also vaguely alleges that the JCSO and Judge Cousins "conspired to release Plaintiff from jail" later than the designated time. (*Id.* at 5). At no point in her amended complaint has Plaintiff alleged facts sufficient to show that any Defendant violated a protected right or that there has been any continuing risk of injury since Plaintiff left the jail. Without such allegations, dismissal of Plaintiff's §§ 1985 and 1986 claims is warranted.

F.     **Conclusion**

For the reasons explained above, Defendants' Motions (Docs. # 5, 9, 11) are due to be

---

[5] The remaining portions of § 1985 are inapplicable to Plaintiff's allegations because those provisions relate to "institutions and processes of the federal government," *see Rush v. Rutledge*, 460 U.S. 719, 724-25 (1983), while Plaintiff's allegations relate to state proceedings.

granted and this action is due to be dismissed. A separate order in accordance with this memorandum opinion will be entered contemporaneously.

    **DONE** and **ORDERED** this July 13, 2022.

                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE